**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――

RICHARD ALLEN BLISS,

                            Plaintiff,

        v.                                                    No. 13-CV-1086
                                                                    (GLS/CFH)

CAROLYN W. COLVIN, Commissioner of
Social Security,

                            Defendant.

―――――――――――――――――――――――――――――

**APPEARANCES:**                          **OF COUNSEL:**

LEGAL SERVICES OF CENTRAL          CHRISTOPHER CADIN, ESQ.
  NEW YORK - SYRACUSE
Attorneys for Plaintiff
472 South Salina Street
Suite 300
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION     JASON P. PECK, ESQ.
Office of Regional General Counsel      Special Assistant United States Attorney
  Region II
Attorney for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Richard Allen Bliss ("Bliss") brings this action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) seeking review of a decision by the Commissioner of Social

Security ("Commissioner") denying his application for benefits under the Social Security

Act.  Compl. (Dkt. No. 1).  Bliss moves for a finding of disability and seeks to have the

―――――――――――――――――

    [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

decision vacated and reversed, or alternatively, remanded to the Commissioner for further proceedings. Pl.'s Mem. (Dkt. No. 17) at 6. The Commissioner cross-moves for a judgment on the pleadings. Def.'s Mem. (Dkt. No. 18) at 3. For the following reasons, it is recommended that the Commissioner's decision be affirmed.

## I. Background

### A. Facts

Born on May 6, 1967, Bliss was forty-three years old when he applied for disability benefits. Tr. at 95, 188.[2] Bliss did not complete high school, finishing only the eleventh grade in special education. Tr. at 49. While in high school, Bliss attempted, but did not complete, a vocational food service training program. Tr. at 53. Bliss has attempted his GED three times, leaving the program prior to completion each time. Tr. at 52–53. Bliss was previously employed as a dishwasher, salad maker, prep cook, and housekeeper in addition to working at a country club and multiple stints in the fast food industry. Tr. at 56, 61–62, 64–65, 221. Bliss alleges disability from diabetes, degenerative disc disease of the lower lumbar spine, high blood pressure, anxiety, depression, borderline personality disorder, high cholesterol, asthma, and lower back pain. See Tr. at 65, 95, 309.

### B. Procedural History

On November 8, 2010, Bliss protectively filed an application for social security

_____

[2] "Tr." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 13.

disability insurance ("SSDI") and social security income ("SSI") benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of July 1, 2005.  Tr. at 188, 195.  That application was denied on January 21, 2011.  Tr. at 27, 101–06.  Bliss requested a hearing before an administrative law judge ("ALJ"), John Ramos, which was held on April 12, 2012.  Tr. at 43–92 (transcript of the administrative hearing).  In a decision dated May 10, 2012, the ALJ found that Bliss was not entitled to disability benefits.  Tr. at 27–38.  Bliss's representative filed a timely request for review with the Appeals Council and on July 1, 2013, the request was denied, thus making the ALJ's findings the final decision of the Commissioner.  Tr. at 1–5.  This action followed.

## II.  Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y.

3

2005) (citing <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court

cannot substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's decision.  <u>Yancey</u>

<u>v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported

by substantial evidence, it is conclusive.  42 USC § 405(g) (2006); <u>Halloran</u>, 362 F.3d at

31.


### B.  Determination of Disability[3]

   "Every individual who is under a disability shall be entitled to a disability. . . benefit. .

. ." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of

not less than 12 months."  <u>Id.</u> § 423(d)(1)(A).  A medically determinable impairment is

an affliction that is so severe that it renders an individual unable to continue with his or

her previous work or any other employment that may be available to him or her based

upon age, education, and work experience.   <u>Id.</u> § 423(d)(2)(A).  Such an impairment

must be supported by "medically acceptable clinical and laboratory diagnostic

techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based

[upon] objective medical facts, diagnoses, or medical opinions inferable from [the] facts,

---

[3]  While the SSI program has special economic eligibility requirements, the
requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI)
and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are
identical, so that "decisions under these sections are cited interchangeably."  <u>Donato v.
Sec 'y of Health and Human Servs.</u>, 721 F.2d 414, 418 n.3 (2d Cir.1983) (citation
omitted).

subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

5

## C. ALJ Ramos's Findings

Bliss, accompanied by a non-attorney representative, testified at a hearing held on April 12, 2012. Tr. at 43–92. At the start of the hearing, Bliss's representative amended the alleged disability onset date to August 20, 2010. Tr. at 48. Using the five-step disability sequential evaluation, the ALJ found that Bliss: (1) had not engaged in substantial gainful activity since August 20, 2010; (2) had the following severe medically determinable impairments: degenerative disc disease of the lumbar spine, diabetes, and mood disorder; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains "the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) . . . but should avoid work requiring more complex interaction or joint effort to achieve work goals, and handle reasonable levels of simple, work-related stress in that he can make decision directly related to the performance of simple tasks in a position with consistent job duties that does not require [Bliss] to supervise or manage the work of others"; (5) could not perform past relevant work; and (6) given his age, education, work experience, and RFC, was able to perform a significant number of jobs in the national economy. See at Tr. 29–37. Therefore, a determination of not disabled was made. Tr. at 38.

## D. Bliss's Contentions

Bliss first contends the ALJ's severity determination is inaccurate, incomplete, and not based on substantial evidence. Pl.'s Mem. at 15. Bliss next claims the ALJ did not fully develop the record. Id. at 17. Bliss then asserts the ALJ failed to follow the

6

treating physician's rule.  Id. at 18.  Bliss next argues the RFC is inaccurate, incomplete, and not based upon substantial evidence.  Id. at 20.  Bliss then contends the ALJ's credibility determination is inaccurate and insufficient.  Id. at 26.  Lastly, Bliss argues the Commissioner failed to meet her burden to show other work Bliss can do based on his RFC.  Id. at 28.

## 1.  ALJ's Severity Determination

Bliss contends that the ALJ's determination of the severity of his impairments is not supported by substantial evidence.  Pl.'s Mem. at 15.  As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities for a continuous period of time of not less than one year.  See subsection II(B) supra.  Thus, a diagnosis alone is insufficient to establish a severe impairment as, instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities.  20 C.F.R. § 404.1521(b). The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs."  Id.  Basic work activities which are relevant for evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

7

Id.; see also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y. 1996); Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3–4 (S.S.A. 1985).

Bliss's contends that because his depressive disorders, anxiety, anger, intermittent explosive disorder, and antisocial personality disorder have more than a de minimis effect on his ability to engage in substantial gainful activity, the ALJ should have included them in the severity discussion. Pl.'s Mem. at 15, 17. After a review of the record, this claim is found to be without merit. In fact, the ALJ did in fact address these non-exertional limitations. See Tr. at 29–30. The ALJ considered these limitations though he termed them collectively to be a "mood disorder" for the purpose of his analysis. See id. The ALJ, in making his determination of Bliss's severe impairments, discussed the reports of Drs. Dubro and Carr, and concluded that mood disorders did list among Bliss's severe impairments. Tr. at 30. Thus, any dispute between Bliss and the ALJ on this point is a result of the ALJ's decision to consider all of Bliss's non-exertional limitations collectively termed as a mood disorder. Accordingly, the ALJ properly considered the severity of Bliss's depressive disorders, anxiety, anger, intermittent explosive disorder, and antisocial personality disorder.

Bliss also claims that the ALJ failed to properly evaluate the severity of his pain and consider said pain as a severe impairment. Pl.'s Mem. at 15. This claim also fails. See 20 C.F.R. §§ 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment."), 404.1529(b) ("Your symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

Symptoms such as pain are to be considered by the ALJ in making a determination as to how a severe impairment may impact an individual's ability to engage in substantial gainful activity, but only when the symptoms are attributable to a medically-determinable physical or mental impairment. 20 C.F.R. § 404.1529(a). Such symptoms cannot be considered to be severe impairments independent of a medical condition to which they can be attributed. See id. The pain Bliss complained of was not a separate severe impairment, but, rather, Bliss's own perception of his degenerative disc disease of the lumbar spine. As such, the ALJ should only consider complaints of pain to the extent Bliss's degenerative disc disease alters Bliss's ability to engage in substantial gainful activity. Here, in the RFC discussion, the ALJ evaluated how Bliss's pain, in connection with the affect of degenerative disc disease, would have an impact on Bliss's ability to engage in substantial gainful activity. See id.; Tr. at 34–35.

As the ALJ properly considered Bliss's depressive disorders, anxiety, anger, intermittent explosive disorder, antisocial personality disorder, and pain, there was no error made in determining Bliss's severe impairments. Accordingly, the Commissioner's decision on this issue should be affirmed.

### 2. Development of the Record

An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an]

application . . . ."); 20 C.F.R. § 404.1512(e) (explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations).  Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citation omitted); Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks, altercations, and citation omitted).

It appears Bliss was attempting to argue that the record was not fully developed because the ALJ did not consider his Wechsler Adult Intelligence Scale ("WAIS-IV") IQ score of 72.  Pl.'s Mem. at 17–18.  Bliss argues that his IQ score, in conjunction with his physical or mental disorders, may meet Listing 12.05C.  Id.; POMS DI 24515.056 D.1.c.[4]  However, this contention is without merit.  In his decision, the ALJ gave reduced

---

[4] Specifically,

Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment.

weight to the report completed by Dr. Moore, a psychologist, who administered the WAIS-IV test for Bliss. Tr. at 37, 361. This was because the ALJ found Dr. Moore's report to be inconsistent with the longitudinal medical evidence in the record and based primarily on Bliss's own reports. Tr. at 37.

With respect to inconsistencies, the ALJ noted several in his RFC determination. The ALJ noted Dr. Dubro, a consultative examiner, concluded that Bliss is able to follow, understand, attend to, and remember directions and instructions. Tr. at 35, 436–37. Dr. Dubro had also found that Bliss is able to perform daily and complex tasks independently on a regular basis and capable of making appropriate decisions. Tr. at 35, 437. The ALJ noted the opinions of the administration's psychiatric consultant, Dr. Mata, who found that Bliss's ability to remember locations and work-like procedures and to understand short and simple instructions was not significantly limited and that the ability to understand and remember detailed instructions was only moderately limited. Tr. at 36, 439. Moreover, Bliss has not cited to any medical evidence in the record to support his assertion that his IQ score of 72 renders him mentally deficient.[5] Any

---

> The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI 24515.056 D.1.c.

[5] As noted supra, an IQ score of 72 falls in the slightly higher IQ range. See note 4 on Listing 12.05C. Further, Dr. Moore had assessed Bliss with a verbal/comprehension index of 83, perceptual/reasoning index of 73, working/memory

intellectual deficits were incorporated into the ALJ's RFC determination. Tr. at 33–34.

Despite the conflicting opinions, the ALJ determined that he could properly render a decision on the 271-page medical record. In his decision, an ALJ is not required to discuss every piece of evidence before him. See Mongeur, 722 F.2d at 1040 ("Where, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion on disability") (citations omitted); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("Notwithstanding the apparent inconsistency between [two medical] reports . . . we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony.").

It also appears that Bliss was attempting to contend the ALJ should have recontacted Dr. Moore after finding such inconsistencies. However, an ALJ is required to recontact a treating source only if the records received were inadequate to determine whether the claimant was disabled. Perez, 77 F.3d at 47. That is not the case here. "The mere fact that medical evidence is conflicting . . . does not mean that an ALJ is required to re-contact a treating physician." Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012). It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such. Id. at 29–30. The ALJ weighs all evidence to determine whether a claimant is disabled based on the evidence before him or her. See Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The

_____

index of 74, and processing/speed index of 76. Tr. at 360.

trier of fact has the duty to resolve that conflict.").  As such the ALJ has adequately developed the administrative record and his determination was supported by substantial evidence.  See id.; Johnson 312 F. Supp. 2d at 426; Rosa, 168 F.3d at 82–83.

Accordingly, the Commissioner's decision on this issue should be affirmed.


### 3.  Treating Physician's Rule

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "This rule applies equally to retrospective opinions given by treating physicians."  Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted).  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion:  "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If

13

other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133–34; see 20 C.F.R. § 404.1527(e) (2005).

Bliss contends that the treating physician's rule was disregarded by the ALJ when the ALJ failed to assign controlling weight to the opinions of Dr. Carr, Bliss's treating mental health professional.  See Pl.'s Mem. at 19–20.  The ALJ did not assign controlling weight because of inconsistences between Dr. Carr's treatment notes and the report he provided to the ALJ.  Tr. at 36.  The ALJ, instead, assigned the report only "some weight" in recognition of Dr. Carr's long treatment history with Bliss.  Id. Specifically, the ALJ points to Dr. Carr's treatment notes where Dr. Carr concludes that Bliss is "feeling better about life."  Tr. at 428.  Additionally, the treatment notes indicate that at times Bliss was well dressed and groomed (Tr. at 427) and overall achieving a higher level of functionality (See Tr. at 422) than Dr. Carr's report to the ALJ would indicate.  See Tr. at 525.  For the aforementioned reasons, the ALJ determined that Dr. Carr's report was not entirely credible and assigned it reduced weight.  Tr. at 36.

The ALJ also appears to have relied on consultant physician testimony in determining not to afford controlling weight to Dr. Carr's report.  See Tr. at 36–37; Mongeur, 722 F.2d at 1039 (finding that "[i]t is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence and the report of a consultative physician may constitute such evidence.") (citations omitted).

The ALJ notes that he assigns at least some weight to the reports of Drs. Mata, Dubro, Hare, and Moore.  See Tr. at 36–37.  In particular, the report of Dr. Mata, the administration's psychiatric consultant, is given relatively high weight because of "her programmatic expertise, review of the claimant's medical records, and the relative consistency of her opinions with the longitudinal medical evidence in the record."  Tr. at 36.  The ALJ used these competing evaluations to conclude that Dr. Carr's testimony was not worthy of controlling weight because it was not supported by other substantial evidence.

As there exists substantial evidence to support the ALJ's decision to not assign controlling weight to Dr. Carr's opinions, the ALJ did not err in failing to apply the treating physician's rule.  See Halloran, 362 F.3d at 31; Berry, 675 F.2d at 467.  Accordingly, the Commissioner's decision on this issue should be affirmed.

### 4. RFC

Bliss contends that the ALJ's RFC determination was not supported by substantial evidence and the ALJ had improperly applied the regulations.  RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.

New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003).  The Second Circuit has clarified that, in Step 5 of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]."  Pourpre v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

> Each finding as to the plaintiff's functional abilities must be supported by substantial evidence because conclusory statements regarding plaintiff's capacities are not sufficient . . . Only after the ALJ has described the plaintiff's capabilities on a function-by-function basis supported by substantial evidence may RFC then be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

DiVetro v. Comm'r of Soc. Sec., No. 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *2 (N.D.N.Y. Aug. 21, 2008) (internal quotation marks and citations omitted).

Under the regulations, if a claimant's symptoms suggest a greater severity of impairment than supported by the objective medical evidence, other factors will be considered, including:  daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; treatment, other than medication, received for relief of symptoms; any measures used to relieve symptoms; and other factors concerning functional limitations due to the symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  However, statements about a claimant's pain or symptoms alone are not enough to establish a disability.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ determined that Bliss retained the RFC

> to perform sedentary work . . . in that [Bliss] is able to lift
> and/or carry ten pounds occasionally and less than ten
> pounds frequently, stand and/or walk for two hours in an
> eight-hour workday, and sit for six hours in an eight-hour
> workday.  Additionally, [Bliss] retains the ability to
> understand and follow simply instructions and directions,
> perform simple tasks with supervision and independently,
> maintain attention and concentration for simple tasks,
> regularly attend to a routine and maintain a schedule, relate
> to and interact appropriately with others to the extent
> necessary to carry out simple tasks but should avoid work
> requiring more complex interaction or joint effort to achieve
> work goals, and handle reasonable levels of simple, work-
> related stress in that he can make decision[s] directly related
> to the performance of simple tasks in a position with
> consistent job duties that does not require the claimant to
> supervise or manage the work of others.

Tr. at 34–35.

Bliss first contends that the RFC does not consider how his exertional limitations limit his ability to consistently perform an activity.  According to SSR 96-9P and POMS DI 25015.020,

> **Standing and walking:**  The full range of sedentary work
> requires that an individual be able to stand and walk for a
> total of approximately 2 hours during an 8-hour workday.  If
> an individual can stand and walk for a total of slightly less
> than 2 hours per 8-hour workday, this, by itself, would not
> cause the occupational base to be significantly eroded.
>
> . . .
>
> **Sitting:**  In order to perform a full range of sedentary work,
> an individual must be able to remain in a seated position for
> approximately 6 hours of an 8-hour workday, with a morning
> break, a lunch period, and an afternoon break at
> approximately 2-hour intervals.  If an individual is unable to
> sit for a total of 6 hours in an 8-hour work day, the unskilled
> sedentary occupational base will be eroded.
>
> . . .

The fact that an individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level.

. . .

**Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

SSR 96-9P, 1996 WL 374185, at *6–7 (S.S.A. July 2, 1996). Bliss further cites to SSR 83-12, under which an individual who may sit for a time but must get up and stand or walk before returning to sitting is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work. SSR 83-12, 1983 WL 31253 (S.S.A. 1983).

Bliss maintains that he is incapable of performing prolonged siting or standing; thus, his occupational base is limited. With respect to his subjective complaints, Bliss contends that physical pain prevents him from standing for longer than fifteen minutes and sit for longer than thirty minutes before having to change positions. Tr. at 254. Bliss notes that he has reported difficulty standing and sitting, suffers from back pain, experiences pain radiating from lower back to both legs. Tr. 286, 304, 307–08, 318, 324, 327, 330. Furthermore, in March 2006, a treating physician noted that Bliss could not stand for more than one hour at a time. Tr. at 307.

Here, the ALJ's RFC determination on Bliss's exertional limitations is supported by substantial evidence.  The ALJ noted that Dr. Magurno, a consultative internal medicine examiner, had opined Bliss shows marked limitations for lifting and carrying, moderate limitations for walking and squatting, and mild limitations for standing.  Tr. at 35, 433. Dr. Magurno further opined that Bliss had no limitations for sitting and fine motor activity.  Tr. at 35, 433.  As for gait and station, Dr. Magurno found Bliss to have a slow gait but can stand on heels and toes, squat half way down, had a normal stance, did not use assistive devices, did not require assistance with changing for the exam or getting on and off the exam table, and had mild difficulty rising from a chair.  Tr. at 431.  Dr. Magurno found that Bliss's cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  Tr. at 432.  Bliss's lumbar spine flexion was limited to forty degrees but had full extension, lateral flexion bilaterally, and full rotary movement bilaterally.  Tr. at 432.  Bliss has full range of movement for in the shoulder, elbows, forearms, wrists, knees, ankles, and hip except for flexion limited to ninety degrees bilaterally.  Tr. at 432.  The above medical evidence constitutes substantial evidence supporting the ALJ's RFC determination that Bliss can lift or carry ten pounds occasionally and less than ten pounds frequently, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Pennay v. Astrue, No. 05-CV-0673 (FJS/DEP), 2007 WL 5465987, at *7 (N.D.N.Y. Aug. 3, 2007) ("The opinions of a consultative examiner can provide substantial evidence to support an ALJ's determination.") (citing Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (indicating that state agency consultative examiners "are qualified as experts in the evaluation of medical issues in disability claims.  As such

their opinions may constitute substantial evidence if they are consistent with the record as a whole.")).

Furthermore, the ALJ noted that Bliss has reported going camping, swimming, fishing, and drinking water from a waterfall. Tr. at 35, 376. The ALJ further noted that Bliss has little or no recent treatment for back pain. Tr. at 35. Bliss reported to Dr. Magurno that he cooks five times a week, cleans once or twice a week, does laundry once a month, shops once a month, carries out childcare each day, and dresses daily. Tr. at 430. As such, the ALJ has considered Bliss's daily activities as well as the types of treatment received for alleviating symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Rivera v. Harris, 623 F.3d 212, 216 (2d Cir. 1980) ("[Plaintiff's] testimony showed that despite her pains and shortness of breath, she can cook, sew, wash and shop, so long as she does these chores slowly and takes an afternoon rest. Taken as a whole, appellant's testimony did not preclude the possibility that she could perform gainful activity of a light, sedentary nature").

Bliss next contends that the RFC does not consider how his social functioning limitations affect his ability to consistently perform an activity. Bliss contends that he has great difficulty in socializing with other people, becomes nervous around people, and has drastic mood changes, anger, and depression. Tr. 56–7, 59–60, 62, 72. Bliss contends that the ALJ disregarded his difficulty with concentration, which limits his persistence and pace. Bliss asserts that he stays at home, watches television, and is easily confused and frustrated. Bliss further points to his GAF scores, which range from 45 to 55 between November, 2008, and January, 2012. Tr. 505, 535.

In this case, the ALJ's RFC determination on Bliss's social functioning is supported

by substantial evidence.  The ALJ noted that Dr. Dubro, a consultative examiner, opined

that Bliss can follow, understand, attend to, and remember directions and instructions.

Tr. at 35, 436–37.  Dr. Dubro concluded Bliss only has mild limitations with attention,

concentration, learning new tasks, regularly attend to a routine, and maintain a schedule

and moderate limitations in interacting with others.  Tr. at 35, 437.  Further, Dr. Dubro

found that Bliss can perform daily and complex tasks independently on a regular basis

and is capable of making appropriate decisions.  Tr. at 35, 437.  Dr. Dubro also noted

that "[u]ntil recently, [Bliss] had been attending GED preparation classes [but] stopped

attending reportedly because he could not find someone to watch his daughter during

the time that he was at the class."  Tr. at 434.  This was not due to any social

functioning limitation.  Finally, with regard to GAF scores, defendant points out that in

November 2010, Bliss was given a GAF score of 59, an increase from 50 in May, 2008.

Tr. 422, 426.  In short, the social functioning portion of the ALJ's RFC determination is

supported by the above substantial evidence.

Accordingly, the Commissioner's decision on this issue should be affirmed.


### 5.  Credibility Determination

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding

disabling pain and to arrive at an independent judgment, in light of medical findings and

other evidence, regarding the true extent of the pain alleged by the claimant."  Marcus v.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  If plaintiff's testimony concerning the intensity,

persistence or functional limitations associated with his impairments is not fully

supported by clinical evidence, the ALJ must consider additional factors in order to

assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)–(vi), 416.929(c)(3)(i)–(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence.  <u>See</u> SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996).  One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.  SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  <u>Saxon v. Astrue</u>, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  <u>Melchior v. Apfel</u>, 15 F. Supp. 2d 215, 219 (N.D.N.Y.1998) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period.  <u>Howe–Andrews v. Astrue</u>, No. CV-05-4539 (NG), 2007 WL 1839891, at *10 (E.D.N.Y. 2007).  The ALJ must also consider whether "good reasons"

exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82–59; see also Grubb v. Apfel, No. 98 CIV. 9032 (RPP), 2003 WL 23009266, at *4–8 (S.D.N.Y. 2003). The ALJ determines issues of credibility and great deference is given his judgment. Gernavage v. Shalala, 882 F. Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

The ALJ gave reduced weight to Bliss's statements regarding the degree to which he was limited by his disorders, stating: "the [ALJ] finds that [Bliss's] . . . impairments could reasonably be expected to cause the alleged symptoms; however, [Bliss's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible." Tr. at 35. To support his decision, the ALJ cites numerous occasions where Bliss would act contrary to the symptoms he claimed to be experiencing, both mentally and physically. See id. With respect to Bliss's mental impairments, the ALJ concluded "[Bliss] appears only to treat his mental health issues when motivated by probation or a social service agency monitoring his ability to care for his daughter." Id. Bliss admitted to Dr. Greggo that he had been off of his psychotropic medication for multiple weeks while Dr. Greggo indicated that it was likely longer. Tr. at 476. Rite Aid Pharmacy confirmed that Bliss had not filled various mental health prescriptions in approximately four months, seven months, and two years. See Tr. at 476.

Concerning Bliss's physical impairments, the ALJ also determined that Bliss's actions contradicted his assertions on the level to which his physical impairments actually impeded his ability to work. See Tr. at 35. While Bliss testified that he had severe physical limitations including being unable to drive due to back pain (Tr. at 50),

having to take a ten-minute break when climbing ten to fifteen stairs (Tr. at 50–51), being unable to stand while working without regular breaks to sit (Tr. at 57, 61–63), and being unable to bend (Tr. at 64), the ALJ noted that some of Bliss's actions contradict these claims.  See Tr. at 35.  The ALJ specifically mentions Bliss's admission to Dr. Greggo that he was considering engaging in sexual activity and that he had recently gone fishing, camping, swam in a lake, and drank from a waterfall.  See Tr. at 35, 368, 376.  The ALJ concludes his discussion by noting "[Bliss's] criminal record and poor work history over the years demonstrates a weak attachment to the work force, which detract from his credibility regarding motivation to work."  Tr. at 35.

Given the ALJ's discussion on Bliss's hearing testimony, medication, activities of daily living, and ability to work, substantial evidence exists supporting the ALJ's determination of Bliss's credibility.  See Halloran, 362 F.3d at 31; Berry, 675 F.2d at 467.  As such, the ALJ did not err in assessing Bliss's credibility and Bliss's motion on this ground should be denied.  Accordingly, the Commissioner's decision on this issue should be affirmed.

**6. Commissioner's Burden**

Lastly, Bliss claims that the Commissioner failed to meet her step-five burden.  Pl.'s Mem. at 28.  Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability.  Pratt v. Chater, 94 F.3d 34, 38 (2d Cir. 1996).  Generally speaking, if a claimant suffers only from exertional impairments, then the

Commissioner may satisfy his burden by resorting to the applicable grids.[6] <u>Pratt</u>, 94

F.3d at 39.  The grids "take[ ] into account the claimant's residual functional capacity in

conjunction with the claimant's age, education and work experience." <u>Rosa</u>, 168 F.3d at

79.  Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this

burden "by resorting to the applicable medical vocational guidelines (the grids)." <u>Id.</u> at

78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

    The Second Circuit has held that "the mere existence of a nonexertional impairment

does not automatically require the production of a vocational expert or preclude

reliance" on the grids.[7] <u>Bapp v. Bowen</u>, 802 F.2d 601, 605 (2d Cir. 1986).  The

testimony of a vocational expert that jobs exist in the economy which claimant can

obtain and perform is required only when "a claimant's nonexertional impairments

significantly diminish his ability to work—over and above any incapacity caused solely

from exertional limitations—so that he is unable to perform the full range of employment

indicated by the medical vocational guidelines." <u>Id.</u>  The use of the phrase "significantly

diminish" means the "additional loss of work capacity beyond a negligible one or, in

---

    [6] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling).  20 C.F.R. §§ 404.1569a(b), 416.969a(b); <u>see also</u> <u>Rodriguez v. Apfel</u>, 1998 WL 150981, at *10, n.12 (S.D.N.Y.1998).

    [7] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands.  20 C.F.R. §§ 404.1569a(c), 416.969a(c).  Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); <u>see</u> <u>also</u> Rodriguez , 1998 WL 150981, at * 10, n.12.

other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Rosa, 168 F.3d at 78 (quoting Bapp, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question—whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. Samuels v. Barnhart, No. 01 Civ. 3661 (MBM), 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. Melligan v. Chater, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. 1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir.1983).

Here, Bliss claims the RFC assessment that he can perform unskilled sedentary

work is flawed because the ALJ discounted certain treating and examining physicians' opinions. As discussed <u>supra</u>, the ALJ's RFC analysis was supported by substantial evidence. There is no support for Bliss's contention that he suffered from additional impairments that were improperly omitted from the RFC. Further, Bliss has not set forth any other argument with respect to the ALJ's assessment at step five of the sequential analysis. Thus, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED** and Bliss's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Date: August 8, 2014
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge